UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| JOHN A. RIZZITELLO,<br><br>        Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. CV 13-03037-AS<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On April 30, 2013, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On September 19, 2013, Defendant filed an Answer along with the

Administrative Record ("AR"). (Docket Entry Nos. 15-16). The parties filed a Joint Position Statement ("Joint Stip.") on February 10, 2014, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed June 10, 2013 (Docket Entry No. 5).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On August 23, 2010, Plaintiff, formerly employed as a truck driver (see AR 55, 175), filed an application for Disability Insurance Benefits, alleging an inability to work since September 12, 2009. (See AR 143-44). On November 17, 2011, the Administrative Law Judge ("ALJ"), Lisa Thompson, heard testimony from Plaintiff, medical expert Samuel Landau and vocational expert Heidi Paul. (See AR 43-64). On December 8, 2011, the ALJ issued a decision denying Plaintiff's application. (See AR 26-36). After determining that Plaintiff had severe impairments -- hyptertensive heart disease, hypertension, and obesity (AR 28-30)[1] --, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work[3] with the following limitations: standing or walking for 2 hours in an 8-hour workday; sitting for 6 hours in an

---

[1] The ALJ found Plaintiff's open angle glaucoma and left knee impairment to be non-severe. (AR 30).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

2

8-hour workday; no work involving extreme temperatures; and no concentrated exposure to gases, dust, odors, and other pulmonary irritants, unprotected heights and hazardous machinery. (AR 31-35). Finding that Plaintiff was able to perform his past relevant work as a semi truck driver (AR 35), the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Id.).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 20-21). The request was denied on March 16, 2013. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ failed to: (1) properly reject the opinions of Drs. Neskovic, Bryg, Taylor, and Landau; (2) properly assess Plaintiff's subjective complaints; and (3) properly evaluate whether Plaintiff can perform his past relevant work as a semi truck driver. (See Joint Stip. at 2-13, 18-21, 23-24).

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error has partial merit and warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address P Plaintiff's second and third claims of error.

**DISCUSSION**

**A. The ALJ Properly Evaluated the Opinions of Drs. Neskovic and Taylor. The ALJ Did Not Properly Evaluate the Opinion of Dr. Bryg. The ALJ Did Not Properly Evaluate the Opinion of Dr. Laundau, but the Error Was Harmless**.

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians, Drs. Neskovic and Byrg, and portions of the opinion of Plaintiff's examining physician, Dr. Taylor. Plaintiff further asserts that the ALJ failed to provide any reason for disregarding portions of the opinion of non-examining physician, Dr. Landau. (See Joint Stip. at 2-13). Defendant asserts that the ALJ properly evaluated the opinions of Drs. Neskovic, Byrg, and Taylor, and that the ALJ's error in failing to properly evaluate the opinion of Dr. Landau was harmless. (See Joint Stip. at 13-18).

**1. The ALJ Erred in Assessing the Opinion of One of Plaintiff's Treating Physicians (Dr. Bryg)**

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 812 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent

with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

As set forth below, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Neskovic's opinion about Plaintiff's limitations, but finds that the ALJ did not provide a specific reason for partially rejecting Dr. Byrg's opinion about Plaintiff's limitations.

    a. Dr. Neskovic

Mike S. Neskovic, M.D., a family practice physician, treated Plaintiff from September 12, 2009 to August 31, 2010. (See AR 302, 307, 308-27). In a Cardiac Impairment Questionnaire completed on August 31, 2010, Dr. Neskovic diagnosed Plaintiff with coronary occlusion, essential hypertension, hypertensive heart disease, morbid obesity, chronic ischemic heart disease, and mixed hyperlipidemia, which were based on the clinical findings of shortness of breath, fatigue, weakness, edema, palpitations, and dizziness. Dr. Neskovic opined that Plaintiff had the following functional limitations: could sit and stand/walk 1 hour in an 8-hour workday; could lift and carry up to 10 pounds frequently, up to 20 pounds occasionally, and never more than 20 pounds; Plaintiff's experience of pain, fatigue and other symptoms were

severe enough to interfere with attention and concentration; and Plaintiff was not able to work, even in a "low stress" environment. (See AR 302-07; see also AR 336-41 [dated September 23, 2010]).

The ALJ addressed Dr. Neskovic's opinion as follows:

> Although Dr. Neskovic is identified as a treating source, the undersigned is unable to give this assessment controlling or even great weight. The clinical progress notes repeatedly indicate an unremarkable physical exam. There are no complaints of physical pain. When the claimant presented, wearing a left knee brace and complaining of knee pain, there were no ordered x-rays or other imaging reports, and the musculoskeletal exam still was unremarkable. When the claimant alleged weakness or shortness of breath, his respiratory exam remained normal. [¶] Additionally, the claimant's pressure repeatedly was noted to be under good control. He alleged compliance, but there were references to diet non-compliance, and his weight jumped 20 lbs in 2010. In November 2010, Dr. Neskovic admitted there was no stress test – and the claimant had not seen a cardiologist yet, because of a lack of insurance coverage. He indicated the claimant's manifestations including shortness of breath and swelling of the feet – but these manifestations are not noted in the clinical progress notes. Overall, therefore, the undersigned finds the objective and clinical medical evidence is inconsistent with Dr. Neskovic's assessment of a less than

sedentary functional capacity; and for these reasons, his opinion is given less weight. (AR 33-34).

Dr. Neskovic's opinion about Plaintiff's limitations was inconsistent with the notations in his progress notes. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)(holding that the ALJ's decision to reject the treating physician's opinion, in part, since it was inconsistent with the treating physician's own treatment notes was a specific and legitimate reason supported by substantial evidence); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)(holding that an incongruity between a treating physician's opinion and his or her medical records is a specific and legitimate reason for rejecting the treating physician's opinion of a claimant's limitations); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."). As the ALJ noted, Dr. Nesovic's progress notes reflected unremarkable physical examinations of Plaintiff. (See AR 324-26 [September 28, 2009, stating that Plaintiff's "[r]espiratory pattern is regular with symmetrical movements and no distress; lungs clear to auscultation" and that, with respect to Plaintiff's cardiovascular system, "[r]egular rate and rhythm. No murmurs or gallops."; sitting blood pressure 118/75]; 321-23 [October 22, 2009, same exam results for respiratory and cardiovascular systems; sitting blood pressure 120/83]; 318-20 [February 11, 2010, same exam results for respiratory and cardiovascular systems; sitting blood pressure 144/78]; 315-17 [April 29, 2010, same exam results for respiratory and cardiovascular systems; sitting blood pressure 144/67];

312-14 [June 8, 2010, same exam results for respiratory and cardiovascular systems; no X-rays ordered although Plaintiff complained of weakness and pain and was wearing a brace on his left knee; sitting blood pressure 139/83]; 308-11 [August 31, 2010, same exam results for respiratory and cardiovascular systems; sitting blood pressure 160/104)]. Moreover, as the ALJ noted (see AR 34-35), Dr. Neskovic stated in a report dated November 22, 2010 (prepared for the purposes of determining Plaintiff's eligibility for disability benefits in Oklahoma, see AR 342-43) that Plaintiff had symptoms of shortness of breath and swelling of feet (see AR 344), although there were no notations in the Progress Notes regarding shortness of breath and swelling of feet (see e.g., AR 308-26). When the Progress Notes mentioned shortness of breath and swelling of the feet, they were referring to Plaintiff's past complaints to other medical providers. (See AR 308 [noting Plaintiff's complaint of shortness of breath when hospitalized in September 2009 and Plaintiff's complaint of swelling of legs in October 2008]; 312 [noting Plaintiff's complaint of swelling of legs in October 2008]; 315 [same]; 318 [same]; 321 [same]; 324 [same]).

Contrary to Plaintiff's assertion (see Joint Stip. at 7-8), the facts of Plaintiff's hospitalizations for shortness of breath or chest pain -- (1) Plaintiff, complaining of shortness of breath, generalized weakness and lower extremity edema, was hospitalized at Verdugo Hills Hospital from September 11-17, 2009, at which time he was diagnosed (following an echocardiogram [which showed ejection fraction at 25%], left heart catherization, and chest x-rays) with congestive heart failure, pulmonary edema, cardiomyopathy, hypertension, and hypokalemia (see AR 229-58); and (2) Plaintiff, complaining of chest pains, was

1  admitted to Olive View - UCLA Medical Center On May 20, 2011 (he was
2  discharged the next day), at which time he was diagnosed <u>inter</u> <u>alia</u> with
3  atypical chest pain, non-ischemic cardiomyopathy and hypertension (<u>see</u>
4  AR 412-17, 453-55) -- are simply irrelevant to the ALJ's determination
5  about the weight given to Dr. Neskovic's opinion. While Dr. Neskovic
6  was apparently aware of Plaintiff's September 2009 hospitalization at
7  Verdugo Hills Hospital (<u>see</u> AR 308, 312, 315, 318, 321, 324, 328, 332),
8  Dr. Neskovic admits he did not have the tests that were done at Verdugo
9  Hills Hospital (<u>see</u> AR 337), and the May 20, 2011 hospitalization at
10 Olive View - UCLA Medical Center took place *after* Dr. Neskovic's
11 treatment of Plaintiff had ended.

13     Contrary to Plaintiff's assertion (<u>see</u> Joint Stip. at 9-10), Dr.
14 Neskovic did not order x-rays or other imaging reports when Plaintiff
15 showed up for his June 8, 2010 office visit wearing a left knee brace
16 and complaining of knee pain. (<u>See</u> AR 312-14). The x-ray of
17 Plaintiff's left knee, which Plaintiff is relying on, was done at Olive
18 View - UCLA Medical Center on January 21, 2011 (<u>see</u> AR 461-64), after
19 Dr. Nekovic's treatment of Plaintiff had ended, and there is no
20 indication that Dr. Neskovic was involved in the ordering of that x-ray.

22     Moreover, contrary to Plaintiff's assertion (<u>see</u> Joint Stip. at 9),
23 the ALJ did not give Dr. Neskovic's opinion less weight based on
24 Plaintiff's lack of insurance coverage and lack of ability to afford
25 medical treatment. Rather, the ALJ simply noted the following notations
26 by Dr. Neskovic in his November 22, 2010 report: that Dr. Neskovic had
27 not performed an exercise stress test; and that although he advised
28 Plaintiff to see a cardiologist, Plaintiff had not seen a cardiologist

because he had no insurance currently and no money to pay. (See AR 342, 345).

To the extent that Plaintiff is alleging that the ALJ improperly rejected the opinion(s) of Plaintiff's treating physician(s) based on the opinion of the consultative examiner, the ALJ's reason was specific and legitimate and based on substantial evidence in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(holding that an examining physician's opinion may constitute substantial evidence to reject a treating physician's opinion).

The ALJ's determination that Plaintiff can perform light work, can stand/walk for 2 hours in an 8-hour workday, can sit for 6 hours in an 8-hour workday, and must avoid extreme temperatures, concentration to gases, fumes, dust, odors, and other pulmonary irritants, unprotected heights and hazardous machinery (see AR 31-35) was supported (with the exception of the stand/walk limitation) by: (1) the February 26, 2011 opinion of the examining physician (Urusla Taylor, M.D., Internal Medicine) who, following a complete examination, found that Plaintiff had the following limitations: lifting and carrying 20 pounds occasionally and 10 pounds frequently (due to heart disease); walking and standing no more than 4 hours out of an 8-hour workday (due to heart disease); sitting no more than 6 hours out of an 8-hour workday (due to lower extremity edema); no limitation regarding an assistive device; no limitations regarding climbing, balancing, kneeling, crawling, bending, crouching, stooping, walking on uneven terrain, climbing ladders, working at heights, and using hands for fine and gross manipulation; avoidance of temperature extremes (due to heart disease); and operating

moving machinery or driving with caution (due to cardiac disease). (See AR 350-51).

The consultative examiner's findings included inter alia that Plaintiff was cooperative, Plaintiff's blood pressure was 146/92, Plaintiff ambulated with a normal gait without assistive devices, Plaintiff's cardiovascular and musculosketal systems were normal, there were trace pitting edemas on the lower extremities, and motor functions, reflexes and sensations were normal. (See AR 348-50). Since the consultative examiner's opinion, which was inconsistent with Dr. Neskovik's opinion (at least with respect to Plaintiff's abilities to stand, walk and sit, and with Plaintiff's ability to work at all, see AR 304-06) and was based on her own clinical findings, the ALJ was entitled to rely on them. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician," such findings are 'substantial evidence.'").]]

  b.  Dr. Byrg

In a Cardiac Impairment Questionnaire completed on October 11, 2011, Robert Bryg, M.D., a cardiologist, stated he treated Plaintiff from June 7, 2011 to September 26, 2011. Dr. Bryg diagnosed Plaintiff with non-ischemic cardiomyopathy corresponding with the New York Heart Association functional class II,[4] based on clinical findings of fatigue,

---

[4] The New York Heart Association system divides heart failure patients into four categories or classes based on how much they are limited during physical activity. Class II represents "slight
(continued...)

edema, and dizziness. After stating that Plaintiff's left ventricular ejection fraction had increased from 25% in September 2009 to 60-65% on July 20, 2011, Plaintiff's primary symptoms were fatigue and dizziness, Plaintiff's symptoms were precipitated by physical exertion, the side effects of Plaintiff's medications were dizziness, fatigue and frequent urination, and Plaintiff's symptoms likely would increase if he was placed in a competitive work environment, Dr. Byrg opined that Plaintiff had the following functional limitations: could sit 6 hours in an 8-hour workday; could stand/walk 2 hours in an 8-hour workday; could lift and carry up to 10 pounds frequently, up to 20 pounds occasionally, and never more than 20 pounds; Plaintiff was likely to be absent from work about 2 to 3 times a month as a result of his impairments; Plaintiff's experience of pain, fatigue and other symptoms were periodically severe enough to interfere with attention and concentration; Plaintiff was able to work in a "low stress" environment (based on his good ejection fraction and his New York Heart Association functional class II status); and Plaintiff needed to avoid fumes, gases, dust and temperature extremes. (See AR 393-98).

The ALJ addressed Dr. Byrg's opinion as follows:

> Despite a very brief treatment history, Dr. Bryg's assessment is evaluated as a treating source statement. The exertional functional capacity restrictions are considered to

---

[4] (...continued) limitation of physical activity," in which the patient is "[c]omfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea." (See Joint Stipulation at 4 n.4, citing Heart Failure Society of America, www.abouthf.org/questions_stages.htm, December 2011; see also Bevans v. Barnhart, 60 Fed.Appx. 167, 169 (9th Cir. 2003).)

12

be consistent with the bulk of objective evidence in the claimant's exhibit file. Dr. Bryg also opined the claimant likely would miss two to three days of work per month; but such an assessment is not corroborated by the claimant's own descriptions of his functional capacity (being able to do chores, drive his motorcycle, shop, run errands, etc.). (AR 34).

In a Function Report-Adult dated October 8, 2010, Plaintiff made the following statements about his daily activities: (1) he watches television, plays darts, rests, does household chores, and does crossword puzzles; (2) as a result of his condition he not able to drive a truck and work; (3) he does chores -- laundry, vacuuming, dishes, cleans window, sweeps, mops -- twice a week; (4) he goes outside every day, driving either a car or a motorcycle; (5) he goes food shopping (i.e., milk, soda) two times a week, one hour each time; (6) he is able to pay bills, count change, handle a saving account, and use a checkbook/money orders; (7) his interests are watching television and listening to talk radio; and (8) every day he spends time with others playing darts and talking; he has to stay home because of shortness of breath and chest pain. (See AR 180-87).

At the hearing, Plaintiff testified as follows: he drives his car and/or motorcycle to the store and then just comes back; he drives his motorcycle perhaps twice a month, but he had not been riding it that much and that it was parked at his cousin's; and he is able to do household chores such as laundry, vacuuming and cleaning the dishes

13

"[s]lowly, for not that long of a period of time," and having to stop and rest before resuming. (See AR 55-57).

Plaintiff's ability to do certain daily activities, as discussed above, simply had no bearing on whether Plaintiff would or would not have had to miss work 2 to 3 days per month as a result of his impairments. Contrary to the ALJ's implied assertion, Plaintiff testified to a limited amount of daily activity, specifically, doing chores (twice a week) for a limited time and then needing to rest (see AR 56-57, 182), driving his motorcycle twice a month, and possibly less (see AR 56), and driving to the store twice a week for one hour and then returning home (see AR 56, 183). Thus, the ALJ has failed to provide a clear and convincing reason for rejecting Dr. Byrg's testimony about the number of workdays per month that Plaintiff likely would miss because of his impairments.

Since the vocational expert testified that a hypothetical person who (in addition to other limitations) on average would miss 2 or 3 workdays per month would not be able to perform Plaintiff's past relevant work (AR 51-52) and that the 2 to 3 times a month missed workday limitation (in addition to other limitations) "would eliminate competitive employment" (AR 54), the ALJ's error in not properly rejecting Dr. Byrg's testimony regarding missed workdays is not harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)(an ALJ's error is harmless "when it is clear from the record. . . that it was 'inconsequential to the ultimate nondisability determination.'").

    **2.    The ALJ Did Not Err in Assessing the Opinion of the Examining Physician**

As discussed above, the consultative examiner, Dr. Taylor, examined Plaintiff. After stating the clinical findings, as discussed above, Dr. Taylor stated the following diagnosis: "History of heart disease. The claimant's blood pressure at this time appears to be mildly elevated and there was only trace lower extremity edema and he appears to have fairly well compensated congestive heart failure, and at this point, does not report any chest pain, but does have some symptoms of cardiac disease including dizziness and shortness of breath." Dr. Taylor then gave her opinion about Plaintiff's work limitations (lifting and carrying 20 pounds occasionally and 10 pounds frequently; walking and standing no more than 4 hours out of an 8-hour workday; sitting no more than 6 hours out of an 8-hour workday; no limitation regarding an assistive device; no limitations regarding climbing, balancing, kneeling, crawling, bending, crouching, stooping, walking on uneven terrain, climbing ladders, working at heights, and using hands for fine and gross manipulation; avoidance of temperature extremes; and operating moving machinery or driving with caution). (See AR 347-51).

The ALJ addressed Dr. Taylor's opinion as follows:

> Dr. Taylor's assessment and opinion have been given great weight. Although she is a consulting internist, her objective and clinical findings are consistent with the treating source clinical findings. Her assessment has been balanced against the claimant's subjective complaints, as well as the

15

1      additional restrictions as assessed by the State Agency.  (AR
2      34).

4      An examining physician's opinion is entitled to greater weight than
5 that of a non-examining physician.  <u>Lester v. Chater</u>, 81 F.3d 821, 830
6 (9th Cir. 1996); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990).
7 The ALJ must provide specific and legitimate reasons supported by
8 substantial evidence in the record when rejecting the controverted
9 opinion of an examining physician.  <u>Lester v. Chater</u>, <u>supra</u>; <u>Andrews v.
10 Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).]]

12      Plaintiff contends that the ALJ totally disregarded Dr. Taylor's
13 opinion that Plaintiff "should only operate moving machinery or drive
14 with caution" (AR 351). (<u>See</u> Joint Stip. at 12).  The Court disagrees.
15 Dr. Taylor did not opine that Plaintiff should be precluded from
16 operating moving machinery or from driving.  Rather, Dr. Taylor opined
17 that Plaintiff should do such activities with caution. (<u>see</u> A.R. 351:
18 "He should only operate moving machinery or drive with caution due to
19 cardiac disease.").  The ALJ's determination about Plaintiff's RFC --
20 which precludes Plaintiff from operating hazardous machinery and which
21 does not preclude Plaintiff from driving (AR 31) -- is consistent with,
22 if not more restrictive than, Dr. Taylor's opinion.

24      Therefore, the ALJ did not err in his assessment of Dr. Taylor's
25 opinion.
26 ///
27 ///
28 ///

16

### 3. The ALJ's Error in Properly Assessing the Opinion of the Testifying Medical Expert was Harmless

At the hearing, medical expert Samuel Landau, Board Certified in cardiovascular disease, testified that, based on his review of the medical records, Plaintiff had medically determinable impairments (hypertensive heart disease, hypertension, and obesity), Plaintiff had been treated for open angle glaucoma, and that there was no objective evidence of ischemic heart disease. Dr. Landau then testified that Plaintiff had the following functional limitations: lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing and walking 2 out of 8 hours; no limitation for sitting with normal breaks (every 2 hours); occasional stooping and bending; no squatting, kneeling, crawling, running or jumping; and no climbing ladders, working at heights or balancing. (See AR 46-48).

After stating that Dr. Landau "opined the claimant did not have functional restrictions, and he limited the claimant to less than a full range of light exertion" (AR 35), the ALJ addressed Dr. Landau's opinion as follows: "Dr. Landau had the opportunity to review the complete medical file, as well as question the claimant directly, should that have been necessary. For these reasons, his opinion has been given great weight." (Id.).

Plaintiff's assertion that Dr. Landau found that Plaintiff "would need to get up [ ] after every two hours of sitting to move around" (see Joint Stip. at 12) mischaracterizes Dr. Landau's opinion. Dr. Landau's opinion with respect to sitting was that "there is no

17

limitation for sitting with normal breaks such as every two hours[.]" (AR 48).

In any event, as Defendant concedes (see Joint Stip. at 17), the ALJ erred in failing to assess Dr. Landau's opinion that Plaintiff was limited to occasional stooping and bending, no squatting, kneeling, crawling, running, jumping, climbing ladders, working at heights and balancing.

However, based on the vocational expert's testimony that a hypothetical person with the limitations found by Dr. Landau (namely, lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing and walking 2 out of 8 hours; no limitation for sitting; occasional stooping and bending; no squatting, kneeling, crawling, running or jumping; and no climbing ladders, working at heights or balancing) and with an additional limitation (avoidance of hazardous machinery) could perform Plaintiff's past relevant work as actually performed (see AR 51), the ALJ's failure to assess Dr. Landau's opinion with respect to those functional limitations was harmless. See Tommasetti v. Astrue, supra; Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no

useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess the opinion of one of Plaintiff's treating physicians (Dr. Byrg) with respect to the number of workdays per month that Plaintiff likely would miss, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[5]

---

[5] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claims regarding whether the ALJ properly assessed Plaintiff's subjective complaints (see Joint Stip. at 18-21) and whether the ALJ properly evaluated whether Plaintiff can perform his past relevant work as a semi truck driver (see Joint Stip. at 23-24). Because this matter is being remanded for further consideration, these issues should also be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 11, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE